IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ARKANSAS MIDLAND RAILROAD, INC.                                             PLAINTIFF

v.                                    Case No. 6:24-cv-6063

ORG CHEM GROUP, LLC                                                         DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Plaintiff Arkansas Midland Railroad, Inc. ("ARMD"). ECF No. 34. Defendant ORG Chem Group, LLC ("ORG Chem") does not oppose the motion. ECF No. 47. The Court finds this matter ripe for consideration.

### I. BACKGROUND

The facts in this case are undisputed. On October 13, 2021, ORG Chem and ARMD entered into a Lease of Track Space for Storage of Cars ("Lease"), in which ORG Chem leased approximately 2,000 feet of track from ARMD for the storage of railcars containing a certain material. ECF No. 34-2. The leased track was located a few miles from ORG Chem's Hot Springs facility. ARMD alleges that ORG Chem breached the Lease and is seeking damages for the breach.

The Lease prohibited ORG Chem from storing "EPA HAZARDOUS WASTES (ALL 48 SERIES STCC'S REGULATED BY US EPA AS HAZARDOUS WASTE OR INFECTIOUS WASTES)" on the leased track. ECF No. 34-2, ¶ 5(c). The Lease stated that ORG Chem would be strictly liable to ARMD for any losses, damages, or claims arising from the storage of hazardous wastes in ORG Chem's railcars on the leased track. ECF No. 34-2, ¶ 5(c). Further, ORG Chem agreed to indemnify, defend, and hold ARMD harmless from and against all consequences for non-compliance with any governmental regulations related to the storage of the contents of the rail cars on the leased track. ECF No. 34-2, ¶ 5(D).

Shortly after the execution of the Lease, ORG Chem began directing ARMD to move ORG Chem railcars from its Hot Springs facility to the leased track. As of June 1, 2022, there were thirty-four (34) ORG Chem railcars on the leased track containing 700,000 gallons of material. The waybills provided to ARMD identified the contents of the railcars as "combustible liquids." ORG Chem did not identify the contents as "waste" or "hazardous waste."

ORG Chem's Hot Springs facility processes and reclaims material, known as crude ortho-chlorotoluene ("COCT"), generated by W.R. Grace at a facility in Louisiana. W.R. Grace utilizes ortho-chlorotoluene ("OCT") in a manufacturing process. Once that process is complete, W.R. Grace is left with a mixture of chemicals that are mixed with a solvent, which is COCT. That material is brought to ORG Chem's Hot Springs facility to reclaim the solvent, the OCT, and return that back to W.R. Grace. ECF No. 34-3, pp. 10-11.[1]

One safety concern with COCT is that it involves the presence of titanium tetrachloride, which can ignite if exposed to oxygen. When ORG Chem would receive the COCT, it would neutralize the titanium tetrachloride found in the COCT. The neutralized COCT would be stored temporarily until it could be run through a steam stripper, which removes the OCT. The OCT would then be further purified and returned to W.R. Grace. ECF No. 34-3, p. 11.

In 2014 and 2015, ORG Chem encountered difficulties separating COCT from the neutralized intermediate. The separation difficulties resulted in a backlog of neutralized COCT. When ORG Chem ran out of storage space at its Hot Springs facility for the neutralized COCT, ORG Chem leased the ARMD track and began storing the neutralized COCT in its railcars on the leased track.

The COCT W.R. Grace sent to ORG Chem would ordinarily be classified as a hazardous

---

[1]The page numbers identified here and throughout this opinion refer to the ECF heading page numbers.

waste by ADEQ but for a waste classification variance issued to W.R. Grace in 2014 by the Arkansas Department of Environmental Quality ("ADEQ"). The variance allowed the COCT to be managed as a solid waste instead of a hazardous waste if certain conditions were met. ECF No. 34-4, p. 5. These conditions include that the reclamation activities must begin within 24-48 hours of receipt of the material at ORG Chem's Hot Springs facility, that no storage could take place, and that the reclaimed material must be returned to W.R. Grace within 24-48 hours of finished reclamation. ECF No. 34-4, pp. 5, 11. In 2015, W.R. Grace informed ADEQ of a temporary change to the variance to allow temporary storing of COCT for several months while ORG Chem upgraded its process at the Hot Springs facility. ECF NO. 34-4, p. 5.

On March 9, 2022, ADEQ inspected ORG Chem's Hot Springs facility, which resulted in an ADEQ Inspection Report. The Inspection Report concluded, among other things: (1) the material ORG Chem received from W.R. Grace would, but for the [Variance] be classified as "hazardous waste;" (2) the Variance allowed this material to be classified as a solid, non-hazardous waste instead of a hazardous waste; (3) at least 940,401 gallons of the partially processed COCT was being stored on ORG Chem's property, which was the same material ORG Chem was storing on the leased track; (4) the conditions of the Variance were not being met because the partially processed COCT was being stored onsite for years and in a large quantity and thus it was considered "hazardous waste;" and (5) because ORG Chem was neutralizing and storing the COCT, they engaged in the treatment and storage of hazardous waste without the permits required by law. ECF No. 34-4.

On December 12-15, 2022, the United States Environmental Protection Agency ("EPA") inspected ORG Chem's Hot Springs facility and concluded that the inventory of W.R. Grace's partially processed COCT at the facility was hazardous waste that was being managed and stored

3

by ORG Chem in violation of applicable law. On January 9, 2023, the EPA inspected the ORG Chem railcars stored at the leased track.

In April 2023, the EPA contacted ARMD with concerns about the contents of the railcars stored at the leased track. This was the first time ARMD learned of these concerns. On April 28, 2023, the EPA emailed ARMD's counsel, informing that the EPA had determined that the waste stored in the railcars on the leased track in ORG Chem's railcars was hazardous waste. The email further stated that, pursuant to the Resource Conservation Recovery Act ("RCRA"), the EPA had the authority to file claims against the owner and/or the operator of the facility (in this instance, ARMR and/or ORG Chem) who are jointly and severally violating the RCRA, and the regulations promulgated thereunder for the storage of RCRA hazardous waste without the required permits. The email pointed out that the RCRA is a strict liability statute.

On May 1, 2023, ARMD sent a letter to ORG Chem informing it of the EPA's April 28, 2023 email. ECF No. 34-5. The letter informed ORG Chem of the following: (1) ORG Chem was in violation of the provisions of the Lease prohibiting the presence or storage of hazardous waste on the leased track; (2) ARMD demands that ORG Chem immediately remove its railcars from the leased track; and (3) ARMD demands that ORG Chem honor its contractual obligations under the Lease to defend and indemnify ARMD for any losses or damages ARMD might suffer because of ORG Chem's violation of the Lease. ORG Chem did not respond to ARMD's letter.

On May 10, 2023, ORG Chem began directing ARMD to remove the railcars from the leased track. The last railcar was removed on October 25, 2023. For purposes of removing the ORG Chem Railcars from the leased track, ORG Chem provided new waybills for each of its railcars. These waybills, for the first time, identified the contents of the railcars as hazardous waste and included the RCRA hazardous waste code D001 (ignitable).

On July 13, 2023, EPA transmitted to ARMD a draft Consent Agreement and Final Order, alleging that the material in the ORG Chem railcars on the leased track was a hazardous waste being stored in violation of environmental law. On September 15, 2023, ARMD sent another letter to ORG Chem informing it that that the EPA had presented this draft consent order and demanding that ORG Chem defend and indemnify ARMD. ECF No. 34-6. ORG Chem did not respond to this letter.

After the removal of the last railcar from the leased track, ARMD notified ORG Chem that it was terminating the Lease and reminded ORG Chem of its surviving duties under the Lease to defend and indemnify ARMD regarding the EPA enforcement action. ECF No. 34-7. ORG Chem did not respond to this letter.

On December 21, 2023, ARMD notified ORG Chem by letter that the EPA had presented ARMD with a penalty demand of $1,877,238.00 for alleged violations of the RCRA involving the ORG Chem railcars. ECF No. 34-8. ARMD again reminded ORG Chem of its obligations to defend and indemnify ARMD and asked that ORG Chem provide by January 5, 2024, all the information in its possession necessary to ARMD's defense against EPA's claims. ORG Chem did not respond to this letter in writing. ORG Chem did not provide any details, specific information, evidence, or documents to assist ARMD in its defense. In a letter dated January 9, 2024, ARMD reiterated its demand that ORG Chem provide any evidence demonstrating that the ORG Chem railcars did not contain hazardous waste. ECF No. 34-9. ORG Chem did not respond to this letter.

On March 1, 2024, ARMD entered into a settlement agreement to resolve the EPA's claims against ARMD related to the ORG Chem railcars stored on the leased track. The settlement included a civil penalty of $910,895.00, which was paid by ARMD on March 21, 2024. ECF No.

34-10.

In the instant case, ARMD brings three breach of contract claims against ORG Chem related to the Lease. ECF No. 2. ARMD alleges that ORG Chem breached the Lease by storing hazardous waste on the leased track, by failing to defend ARMD in the action against it by the EPA, and by failing to indemnify ARMD for the penalty it paid to the EPA. ARMD moves for summary judgment on all three claims. ORG Chem does not oppose the summary judgment motion.

## II.  LEGAL STANDARD

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quotation omitted). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252. "There is no genuine issue of material fact when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Zimmerli v. City of Kansas City, Missouri*, 996 F.3d 857, 862-63 (8th Cir. 2021) (quotation omitted).

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). "The party moving for summary judgment generally has the burden of demonstrating the absence of any genuine issues of material fact." *Zimmerli*, 996 F.3d at 863. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial.

*Anderson*, 477 U.S. at 256.

### III.  DISCUSSION

As an initial matter, the Court notes that "[e]ven when a . . . motion for summary judgment is not opposed . . . , a district court must satisfy itself that, on the record before it, there are no genuine issues of material fact as to at least one of the necessary elements of plaintiff's case." *Noland v. Comm. Mortg. Corp.*, 122 F.3d 551, 553 (8th Cir. 1997).  Thus, the Court must examine the record and decide if the motion is well taken.  *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1213 (8th Cir. 1997).  Accordingly, the Court will proceed to the merits of Plaintiff's motion and decide whether summary judgment is appropriate.

#### A.  Jurisdiction

The Court has jurisdiction over this lawsuit pursuant to diversity of citizenship, and thus the Court will apply the substantive law of Arkansas.  *See Olmstead Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005, 1008 (8th Cir. 2023).

#### B.  Breach of Contract

To prevail on a breach of contract claim under Arkansas law, ARMD must prove the "existence of an agreement, a breach of the agreement, and resulting damages." *Advantage Prop. Mgmt. v. Burkard*, 2024 Ark. App. 342, at 8, 690 S.W.3d 157, 164 (2024).  ARMD argues that ORG Chem breached the Lease when it stored hazardous waste in its railcars on the leased track, failed to defend ARMD against the EPA's claims, and failed to indemnify ARMD for the damages and losses caused by ORG Chem storing hazardous waste on the leased track.  The Court will address each argument in turn.

##### 1.  Storing Hazardous Waste

ARMD argues that ORG Chem violated the express terms of the Lease when it placed and

stored hazardous waste in railcars on the leased track. There is no dispute as to the existence of the Lease. The Lease expressly prohibited ORG Chem from storing hazardous waste on the leased track. ECF No. 34-2, ¶ 5(c). Both the EPA and ADEQ determined that the neutralized COCT stored in ORG Chem's Hot Springs facility was hazardous waste that was being stored in violation of the RCRA and related Arkansas hazardous waste regulations. The EPA determined that the neutralized COCT stored in ORG Chem's railcars on the leased track was the same material that ORG Chem stored at the Hot Springs facility, and thus the railcars were being stored on the leased track in violation of the RCRA. Further, when the railcars were removed from the track, the waybills provided by ORG Chem identified the contents of the railcars as hazardous waste. ARMD has also produced an expert opinion that the material contained in the railcars was a hazardous waste during the time the railcars were stored on the leased track. ECF No. 34-11.

Because ARMD owned the tracks where the hazardous waste was stored, the EPA concluded that ARMD was jointly and severally liable for violations of environmental law. Ultimately, ARMD reached a settlement with the EPA that required ARMD to pay a civil penalty of $910,985.00. In other words, ARMD suffered damages because of ORG Chem's breach of the Lease. Accordingly, the Court concludes that ARMD has proven ORG Chem breached the Lease by storing hazardous waste on the leased track.

### 2. Failure to Defend

ARMD alleges that ORG Chem breached the Lease by failing to defend ARMD against the EPA claims. The Lease required that ORG Chem defend and hold ARMD harmless against all consequences for non-compliance with any governmental requirements related to the storage of the contents of the ORG Chem railcars on the leased track. ECF No. 35, ¶ 5(D).

In 2023, the EPA informed ARMD that, as the owner of the track, ARMD could be held

responsible for the storage of hazardous waste in violation of the RCRA. The EPA demanded that ARMD pay a $1,877,238.00 penalty for these violations. While the EPA was pursuing claims against ARMD, ARMD repeatedly demanded that ORG Chem provide ARMD with any information that could assist ARMD in its defense against the EPA's allegations. Particularly, ARMD sought any evidence from ORG Chem that the neutralized COCT stored in the railcars was not hazardous waste. Despite these repeated requests for assistance, ORG Chem did not provide to ARMD any information or documentation to rebut the EPA's allegations that the neutralized COCT was hazardous waste. As a result of ORG Chem's failure to defend ARMD against the EPA claims, ARMD was ultimately required to pay a civil penalty of $910,895.00. Accordingly, the Court finds that ORG Chem breached the Lease by failing to defend ARMD against the EPA claims.

### 3. Failure to Indemnify

ARMD alleges that ORG Chem breached the Lease by failing to indemnify ARMD for the damages and losses caused by ORG Chem storing hazardous waste on the leased track. The Lease required that ORG Chem indemnify ARMD for any loss or claims incurred in connection with the contents of the railcars stored on the leased track. ECF No. 34-2, ¶5(C). The Lease also states that ORG Chem shall be strictly liable to ARMD for any loss, cost, or expense asserted against or incurred by ARMD arising from the storage of hazardous waste on the leased track. ECF No. 34-2, ¶5(c).

Because ORG Chem breached the Lease and stored hazardous materials in railcars on the leased track, the EPA brought an enforcement action against ARMD, the owner of the leased track. This enforcement action resulted in ARMD paying a $910,895.00 civil penalty. ORG Chem did not indemnify ARMD for this loss. Thus, the Court concludes that ORG Chem breached the Lease

when it failed to indemnify ARMD for the civil penalty it incurred and ultimately paid.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Plaintiff's Motion for Summary Judgment (ECF No. 34) should be and hereby is **GRANTED**.  The Court will issue a separate judgment in favor of ARMD.

**IT IS SO ORDERED**, this 30th day of June, 2025.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge